(No. 23951.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BEN POPILSKY, Plaintiff in Error.

*Opinion filed April 16, 1937—Rehearing denied June 2, 1937.*

CHARLES A. BELLOWS, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR S. VARNES, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

The defendant, Ben Popilsky, was tried and convicted in the criminal court of Cook county on an indictment which charged him with robbery while armed with a deadly weapon. He has sued out this writ of error:

The facts are briefly as follows: On the morning of January 3, 1936, John Schubert, a bell man at the Alexandria Hotel in Chicago, was, at the point of a pistol, forced to get into a car parked at the corner of Rush and Ohio streets, was required to lie face downward so that he could not see either of the robbers, and was robbed of about $100, in cash, which he was carrying from a bank to the hotel. The car was driven rapidly away, was pursued by a squad car and was wrecked. The defendant was arrested by a park policeman while running away from the scene of this accident. When arrested he was taken back to the hotel where Max Esser, a cab starter at the hotel, was being questioned by the police. Esser had stood within two or three feet of the participants in the robbery and identified the defendant as one of the robbers. Esser was the man who had signaled the squad car to follow the sedan in which the robbers were escaping. The defendant was also identified by

another witness as one of the men who ran away from the wrecked automobile. In this wrecked automobile were found a pistol, a flash light and some money which had been a part of that being carried by Schubert to the hotel.

The park policeman who arrested the defendant testified he had to chase him a considerable distance and threaten him with a pistol before defendant submitted to arrest, and that when he was arrested the defendant gave as his reason for running away, that he did not want to get shot. On the trial the defendant testified that he was running to catch a bus, but it was satisfactorily proved that there was no bus likely to be found in the immediate vicinity. Without detailing the testimony of the various witnesses, it is sufficient to say that the evidence is substantially conclusive of the defendant's guilt.

One of the defendant's contentions is, that the court erred in admitting evidence as to what occurred at the hotel when he was brought back and into the presence of Max Esser, the cab starter. The record shows that while the witness, Esser, was being questioned in the office of the manager of the hotel, the defendant was brought in and that the witness immediately said, "There is the man;" that the defendant did not say anything at that moment, but that the officer pushed him into a chair and asked him, "Are you the guy?" to which the defendant replied, "I don't know anything about it; give me a break." Reliance is placed upon that rule of law which has been many times stated, as in *People* v. *Harrison*, 261 Ill. 517: "If a defendant is charged with a crime and unequivocally denies it, and this is the whole conversation, it cannot be introduced in evidence against him as an admission." The difficulty with the position taken by the defendant is that he does not bring himself within the rule. The cab starter's statement, "There is the man," and the policeman's question, "Are you the guy?" certainly do not amount to a charge of crime. Neither could the defendant's alleged

statement "I don't know anything about it; give me a break," amount to an unequivocal denial, unless his use of the pronoun "*it*" be construed to indicate that he knew what the cab starter and the policeman were talking about. If he did, it would be an acknowledgment of guilt rather than an unequivocal denial. The witness testified that a couple of minutes intervened between his statement that the defendant was "the man," and the defendant's statement about "it." It was not error to permit this conversation to go to the jury for what it might be worth. The basis for its admissibility was made up from the surrounding circumstances. (*People* v. *Lopez*, 296 Ill. 438.) In this case the defendant had been arrested at the point of a pistol after trying to escape from an officer. He was immediately taken to the hotel and confronted by a witness who quite obviously accused him of something. His conduct and demeanor under these circumstances, his delay in making any reply, his reference by the word "it" to something of which a perfectly innocent person would have no knowledge, and his request to be given "a break," were all circumstances proper for the consideration of the jury.

Over the defendant's objection the People were permitted to prove that search had been made for one Robert Lewisohn, and that no such person could be found. They were also permitted to prove that a set of licence plates found in the car used in the robbery had been issued to this Lewisohn, and that the residence given by Lewisohn was a short distance from the place where the defendant had resided about three years before the robbery. We fail to see any materiality in this evidence, either for or against the defendant. He was clearly and beyond a reasonable doubt connected with the car used in the robbery and with the robbery itself. Lewisohn was not a co-defendant, so there was no question of prejudice which has sometimes been held to arise when proof has been admitted to show the flight of one jointly indicted with a defendant on trial.

The evidence may have been offered on a theory that Lewisohn was a fictitious or non-existent person whose name was used to conceal the ownership of the criminally-used car, or it may have been offered on a theory of acquaintance-ship between defendant and Lewisohn, with a possible lending of the car. Whatever the theory may have been, the matter was remote from the issue being tried and the evidence was immaterial. However, it added nothing to the case against the defendant and did not prejudice him.

The defendant also complains of improper argument on the part of the assistant State's attorney who tried the case, but the record indicates that on the one or two occasions when slight transgressions occurred, the court promptly ruled in favor of the defendant and we find nothing of sufficient importance in this respect to warrant our serious consideration.

It is also complained that the court erred in refusing to instruct the jury that verbal admissions of the accused should be received with caution, but since there were no verbal admissions of the accused to be considered, there was no error in refusing the instruction. Complaint is also made of a refusal by the trial court to give a rather long and argumentative instruction as to the possibility of identifying witnesses being mistaken in their identification. Instructions given on behalf of the defendant fully covered every theory of the case, including the question of identification and every other theory which he presented on the trial. We find no error in the court's refusal to give the particular instructions requested.

On the whole record, we find that the defendant had a fair trial, that the jury was fully and fairly instructed, and that defendant was proved guilty beyond any reasonable doubt.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*