**People of the State of Illinois, Plaintiff-Appellee, v. Bonnie L. Allen, Defendant-Appellant.**

**Gen. No. 51,767.**

First District, Fourth Division.
November 19, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James N. Gramenos and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Thomas Holum, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LEIGHTON delivered the opinion of the court.

Defendant, a woman 48 years of age, was charged with aggravated battery. She waived trial by jury. The court found her guilty and admitted her to five years' probation. In this appeal she contends that (1) the prosecu-

tion's sole purpose in introducing a statement made by her when she was arrested was to arouse prejudice without throwing any light on the question of her guilt; (2) the court restricted her access to and the use of an original police report, and restricted her cross-examination of the police officer who testified for the prosecution; and (3) the State's proof of the charge of aggravated battery was fatally insufficient.

Three witnesses testified for the State: the complaining witness and her husband who described what occurred on the day of the offense, and a detective who described what occurred on the day he arrested defendant. Defendant did not testify nor did she offer any evidence.

On November 8, 1965, defendant lived with her stepfather at 814 West Oakdale in the City of Chicago. Fred L. Mulich and his wife Helen, lived in apartment 2009, 2930 North Sheridan Road. At about 8:00 a. m. that day, Mr. and Mrs. Mulich were in bed when someone sounded the front door knocker. Mrs. Mulich went to see who was at the door. When she asked, a voice answered, "I am here for Rowena White." Mrs. Mulich knew a Rowena White. Hearing the name, she went to her bedroom and put on a housecoat. Mrs. Mulich returned to the door, opened it, and there was the defendant, a woman Mrs. Mulich had seen on two or three occasions prior to November 8. On the fingers of her right hand, as if they were rings, the defendant had the broken tops of white or greenish diet rite cola bottles. The pieces of glass from the bottle tops were approximately five or six inches long.

When Mrs. Mulich opened the door, defendant, using her shoulder, tried to gain entry into the apartment. Mrs. Mulich resisted. While the two were shoulder to shoulder at the door, Mrs. Mulich took hold of defendant's wrists because it appeared to her that defendant

24

was coming at her face with the pieces of broken glass. Mrs. Mulich tried to keep defendant from entering the apartment. In the struggle, Mrs. Mulich and the defendant fell to the floor, with Mrs. Mulich doing all she could to avoid injury. As Mrs. Mulich rolled over defendant, she felt a slash on her right leg, below the knee. Mrs. Mulich cried out to her husband, asking him to call the police. Mr. Mulich came to the place where the two women were struggling, found his wife bleeding profusely from a cut on her right leg. He forced the defendant away, took his wife to a nearby hospital where she remained from Monday, November 8, to the following Wednesday. The gash on Mrs. Mulich's leg required 28 stitches. The injury resulted in a permanent scar, three inches long.

On November 14, 1965, Detective James Shannon and a fellow policeman went to defendant's home. In the presence of her stepfather, Detective Shannon told defendant she was accused of striking Mrs. Mulich on November 8. According to Detective Shannon, the defendant said, "If I have to die it will not be by my own hand," or "hands."

 It is always proper to prove facts and circumstances attendant on the arrest of a defendant, where those facts and circumstances logically tend in any degree to show perpetration of the crime. People v. Carson, 341 Ill 11, 173 NE 97. The facts and circumstances covered by this principle include any voluntary or spontaneous statement the accused makes at the time of his arrest. The statement or declaration, if short of a confession, may be an admission. People v. Griswold, 405 Ill 533, 92 NE2d 91. When, while being arrested, a person utters a response that is equivocal, it is proper to admit the utterance so that the trial judge, as trier of the facts, can decide what weight to give it as evidence. People v. Popilsky, 366 Ill 268, 8 NE2d 640. Under this

25

rule defendant's statement at the time of her arrest was properly admitted.

Defendant's second contention complains of the trial court's refusal to compel production of the original report made by the police concerning the aggravated battery on Mrs. Mulich, and of restriction on defendant's cross-examination of Detective Shannon. Defendant argues that the original police report, made by a different officer, was subject to her examination because Detective Shannon said he reviewed it before he testified. What was meant by review, and what relevance the original report had to the testimony concerning an arrest six days later, was not made clear. The prosecution objected to its production.

■■ Defendant was entitled for impeachment purposes to inspect any statement of Detective Shannon, or any document he may have used to refresh his recollection so that she could determine whether Detective Shannon's testimony at trial was consistent. People v. Wolff, 19 Ill2d 318, 167 NE2d 197, cert den 364 US 874, 5 L Ed2d 96, 81 S Ct 119; People v. Scott, 29 Ill2d 97, 193 NE2d 814. Defendant was also entitled to a transcript of the grand jury testimony of Detective Shannon, if there was one. People v. Johnson, 31 Ill2d 602, 203 NE2d 399. Both the supplementary police report covering defendant's arrest (the only subject of Shannon's testimony), and a transcript of the officer's testimony before the Grand Jury, were turned over to defendant's counsel upon request at the trial.

■■ As foundation for production, the defendant had to establish that the statement or document was relevant and material, that it was in fact made by the witness, adopted by him, or used by him to refresh his recollection; or as to grand jury testimony, that he testified before that body. People v. Durso, 40 Ill2d 242, 239 NE2d 842; cert den 393 US 1111, 21 L Ed2d 807, 89 S Ct 923 (1969); People v. Golson, 37 Ill2d 419, 226

26

NE2d 610; People v. Watson, 36 Ill2d 228, 221 NE2d 645. No case cited by defendant nor any which our research has produced, holds that the original police report had to be produced simply because Detective Shannon said he reviewed it before he testified. The trial court correctly sustained the prosecution objections. People v. Martin, 35 Ill2d 289, 220 NE2d 170; People v. Dronso, 83 Ill App2d 59, 226 NE2d 460.

 In support of the contention that she was restricted by the trial court, defendant argues that she was not allowed to cross-examine Detective Shannon concerning a claimed property transaction between her and Mr. Fred Mulich. Detective Shannon on direct was not asked any question on this subject. It is obvious, therefore, that the question asked Detective Shannon was outside the scope of direct; it dealt with a totally irrelevant matter. The trial court properly sustained the objections. People v. Gambony, 402 Ill 74, 83 NE2d 321, cert den 337 US 910, 93 L Ed 1722, 69 S Ct 1046 (1948).

Finally, defendant contends that the State's evidence does not support her conviction of the offense of aggravated battery. She advances two arguments in support of this contention.

First, defendant argues that it was not proven beyond a reasonable doubt that she injured Mrs. Mulich. She claims that Mrs. Mulich while struggling with defendant outside the apartment slashed her own leg against pieces of broken glass on the floor.

 Aggravated battery is a crime defined by section 12–4 of our criminal code.* In committing it, the

---

* Ill Rev Stats, c 38, § 12–4(a):

"(a) A person who, in committing a battery, intentionally or knowingly causes bodily harm, or permanent disability or disfigurement commits aggravated battery and shall be imprisoned in a penal institution other than the penitentiary not to exceed one year or in the penitentiary from one to 10 years."

27

only mental state required is that the accused knowingly and intentionally cause the social harm defined in the statute, no premeditation or malice being necessary. It is a general rule that if one voluntarily commits an unlawful act, and while doing so inflicts a personal injury, he is criminally liable. 1 Wharton's Criminal Law and Procedure, § 338, p 685, (Anderson ed (1957)) ; 2 Burdick, The Law of Crime, § 353, p 21 (1946). The principle on which this rule is founded is that everyone is held to contemplate and be responsible for the natural consequences of his acts.

 While it is true the defendant cannot be convicted of the crime charged unless she possessed the mental state required by the statute, it is not necessary that she have intended the particular injury that resulted from her conduct. She intended to do an unlawful and wrongful act: the criminal invasion of the Mulich home, and she obviously came armed with a contrivance capable of inflicting serious injury. Defendant's conduct was a wrong in itself; and in doing it she set in motion the force that inflicted injury on Mrs. Mulich. She is criminally liable for that injury. Commonwealth v. Hawkins, 157 Mass 551, 32 NE 862 (1893) ; Compare People v. Young, 11 NY2d 274, 183 NE2d 319 (1962).

 Second, defendant argues that even if the State's evidence proved that she injured Mrs. Mulich, the injuries did not cause "[G]reat bodily harm, or permanent disability or disfigurement. . . ." as defined in Ill Rev Stats, c 38, § 12–4(a) (1965).

The term "bodily harm" contained in the statute, as was the wording of the earlier statutory provisions it succeeded, is not susceptible to precise legal definition. Whether a particular injury is as serious as that defined in a statute like section 12–4(a) is a question of fact, not of law. People v. Cavanaugh, 18 Ill App2d 279, 152 NE2d 266. In our judgment the trial court

was correct in finding that infliction of a cut on the leg of a woman that requires 28 stitches, and which leaves a permanent three-inch scar, is great bodily harm within the meaning of chapter 38, section 12–4(a). The State's evidence proved beyond a reasonable doubt that defendant committed the offense of aggravated battery.

Judgment is affirmed.

Judgment affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.

